# 24-2344-cv

In The

## United States Court of Appeals

For The Second Circuit

———————————

B & R Supermarket, Inc., doing business as Milam's Market, Grove Liquors LLC, Strouk Group LLC, doing business as Monsieur Marcel, Palero Food Corp., doing business as Fine Fare Supermarket, Cagueyes Food Corp., doing business as Fine Fare Supermarket,

*Plaintiff-Appellees,*

*(For Continuation of Caption, See Inside Cover)*

———————————

On Appeal From The United States District Court
For The Eastern District of New York

## BRIEF OF DEFENDANT-APPELLANT
## AMERICAN EXPRESS COMPANY (FINAL FORM)

Peter T. Barbur
Damaris Hernandez
David H. Korn
Rebecca J. Schindel
Cravath, Swaine & Moore LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

*Attorneys for Defendant-Appellant
American Express Company*

November 15, 2024

---

RUE21, INC.,

*Plaintiff,*

v.

AMERICAN EXPRESS COMPANY,

*Defendant-Appellant,*

VISA, INC., VISA U.S.A. INC., MASTERCARD INTERNATIONAL INCORPORATED, DISCOVER FINANCIAL SERVICES, BANK OF AMERICA, N.A., BARCLAYS BANK DELAWARE, CAPITAL ONE FINANCIAL CORPORATION, CHASE BANK USA, NATIONAL ASSOCIATION, CITIBANK (SOUTH DAKOTA), N.A., CITIBANK N.A., PNC BANK, NATIONAL ASSOCIATION, USAA SAVINGS BANK, U.S. BANCORP NATIONAL ASSOCIATION, WELLS FARGO BANK, N.A., EMVCO, LLC, JCB CO. LTD., UNIONPAY, U.S. BANK NATIONAL ASSOCIATION,

*Defendants.*

---

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Defendant-Appellant American Express Company certifies the following:  American Express Company is a publicly held company.  Berkshire Hathaway, Inc., a publicly held corporation, owns more than 10 percent of the outstanding shares of American Express Company.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................... i

TABLE OF AUTHORITIES ........................................................... iv

PRELIMINARY STATEMENT ......................................................1

JURISDICTIONAL STATEMENT ...................................................4

STATEMENT OF THE ISSUES FOR REVIEW ..........................................4

STATEMENT OF THE CASE ........................................................5

I.   FACTUAL BACKGROUND ......................................................5

II.  PROCEDURAL HISTORY ......................................................8

    A.   Early Case History .....................................................8

    B.   First Motion for Class Certification ...................................... 12

    C.   Second Motion for Class Certification..................................... 15

    D.   Motion To Compel Arbitration ............................................ 19

SUMMARY OF THE ARGUMENT ........................................................ 26

ARGUMENT .................................................................................. 27

I.     STANDARD OF REVIEW ............................................... 27

II.    THE DISTRICT COURT IMPROPERLY REFUSED TO
       ENTER A STAY OF THE CLAIMS FOR WHICH IT
       COMPELLED ARBITRATION. ....................................... 27

III.   THE DISTRICT COURT IMPROPERLY FAILED TO STAY
       PROCEEDINGS AGAINST AMEX AFTER AMEX FILED ITS
       NOTICE OF APPEAL. ................................................... 31

IV.   THE DISTRICT COURT'S SEPTEMBER 24, 2024 TEXT
       ORDER DOES NOT FIX THE PROBLEM. ...................... 32

V.    THE DISTRICT COURT SHOULD HAVE SEGREGATED
       THE CLAIMS OF MERCHANTS WHO ARE REQUIRED TO
       ARBITRATE. ................................................................ 35

CONCLUSION .............................................................................. 37

CERTIFICATE OF COMPLIANCE .............................................. 39

CERTIFICATE OF SERVICE ....................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Suozzi,*
   433 F.3d 220 (2d Cir. 2005) ..................................................... 27

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)................................................................. 30

*Coinbase, Inc. v. Bielski,*
   599 U.S. 736 (2023).............................................. 23, 26, 31, 33

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993)................................................................. 20

*Dexia SA/NV v. Bear, Stearns & Co.,*
   945 F. Supp. 2d 426 (S.D.N.Y. 2013) ..................................... 32

*Griggs v. Provident Consumer Disc. Co.,*
   459 U.S. 56 (1982)................................................................... 31

*Jin v. Shanghai Original, Inc.,*
   990 F.3d 251 (2d Cir. 2021) ..................................................... 35

*Leonhard v. United States,*
   633 F.2d 599 (2d Cir. 1980) ..................................................... 31

*Mazzei v. Money Store,*
   829 F.3d 260 (2d Cir. 2016) ..................................................... 35

*Mediterranean Shipping Co. S.A. Geneva v. POL-Atl.,*
   229 F.3d 397 (2d Cir. 2000) ..................................................... 27

*New York v. U.S. Dep't of Homeland Sec.,*
   974 F.3d 210 (2d Cir. 2020) ..................................................... 31

*Smith v. Spizzirri,*
   601 U.S. 472 (2024).......................................................... 26, 27

**Statutes & Rules**

9 U.S.C. § 16................................................................. 4, 24, 31

iv

28 U.S.C. § 1332................................................................................4

28 U.S.C. § 1404.............................................................................. 11

28 U.S.C. § 1711................................................................................4

**Other Authorities**

*B & R Supermarket et al. v. Visa Inc., et al.*, 1:16-cv-05338
   (S.D.N.Y.).............................................................................. 11

*B & R Supermarket et al. v. Visa Inc., et al.*, 3:16-cv-01150
   (N.D. Cal.) ..............................................................................8

## PRELIMINARY STATEMENT

Plaintiffs assert antitrust conspiracy claims against the four credit card networks—Visa, Mastercard, Discover and American Express ("Amex")—concerning the introduction of EMV chip-card technology, which helps prevent fraudulent credit card transactions. To encourage merchants to install and use EMV technology in order to combat fraud, the networks set a date for a fraud liability shift ("FLS") following which merchants would be liable for fraudulent transactions if they had not installed (and had certified) EMV technology. That liability was imposed through fraud "chargebacks" to the merchants.

Over Amex's objections, Plaintiffs asserted and the District Court certified a single class encompassing all merchants who incurred unreimbursed fraud chargebacks between October 1, 2015, and September 30, 2017. This class includes merchants who accept American Express cards through a Card Acceptance Agreement ("CAA") that requires them to arbitrate any claims against Amex. Thus, following class certification, Amex faced the prospect of a class-action trial in federal court brought by a class that includes merchants who are contractually barred from pursuing their claims against Amex in court.

On November 30, 2022, Amex attempted to remedy the situation by filing a motion to compel arbitration of the CAA-bound merchants' claims, to stay all proceedings as to Amex and to decertify the class. In an order dated August 14, 2024 (the "Order"), the District Court granted Amex's motion to compel arbitration as to the CAA-bound merchants' claims, but it ignored Amex's request to stay and declined to decertify the class as to Amex. Instead, the District Court held that the case could proceed as a class action, but the only certified class includes claims by merchants who are required to arbitrate their claims against Amex and are not entitled to proceed in court.

On August 27, 2024, Amex timely filed a notice of appeal of the Order insofar as it refused to enter a stay. Although Amex's appeal automatically stayed all proceedings against Amex in the District Court and divested the District Court of jurisdiction, the District Court has continued to issue orders affecting Amex's substantive rights.

As a matter of logic, there cannot be a stay of claims by merchants who are required to arbitrate their claims against Amex if they are a part of the only defined class in a class action lawsuit that is heading to trial against Amex. By refusing to decertify the class and affirming that this case will

2

proceed against Amex on behalf of a class that includes merchants who are required to arbitrate, the District Court denied Amex's request for a stay.

There are many ways the District Court could have cured the problem of Plaintiffs asserting class claims in federal court against Amex on behalf of merchants who are required to arbitrate claims against Amex. The District Court could have and should have refused to certify Plaintiffs' proposed class as to Amex, as Amex requested. Alternatively, as Amex also proposed, the District Court could have defined subclasses that separated merchants who are bound to arbitrate their claims against from those who are not—only permitting the latter to proceed. The District Court also could have and should have decertified the class as to Amex and stayed all claims against Amex by CAA-bound merchants once it granted Amex's motion to compel. But the District Court did none of those things. Rather, the District Court improperly held that the case could continue as a class action against Amex even though the only defined class includes claims against Amex by merchants who are required to arbitrate their claims against Amex.

Because the claims against Amex by CAA-bound merchants must be stayed pending arbitration, Amex respectfully requests that the Order be reversed insofar as it refused to enter a stay and directing the District Court to effectuate a stay by, at a minimum, segregating the claims against Amex

by merchants who are required to arbitrate from the claims of merchants who can proceed in court.   Absent such a segregation of claims, no stay is possible.

## JURISDICTIONAL STATEMENT

In the United States District Court for the Eastern District of New York, Amex moved to compel individualized arbitration for all claims brought by class members who have contracts requiring them to arbitrate with Amex, and to stay all proceedings on those claims pending arbitration. (JA446, ECF No. 844, Notice of Mot. to Compel Arbitration; ECF No. 845, Mem. of Law in Supp. of Amex's Mot. to Compel Arbitration.)  On August 14, 2024, the District Court (Hon. Margo K. Brodie) entered an order granting Amex's motion to compel arbitration, but refusing to enter a stay. (JA456-57, ECF No. 936, Mem. & Order re Amex's & Discover's Mots. to Compel at 2-3.)  Amex timely filed a notice of appeal on August 27, 2024. (JA493, ECF No. 941, Notice of Appeal.)  This Court has jurisdiction under 9 U.S.C. § 16(a)(1)(A) from the order "refusing a stay".  The District Court had jurisdiction under 28 U.S.C. § 1332(d) and 28 U.S.C. § 1711, *et seq*.

## STATEMENT OF THE ISSUES FOR REVIEW

Whether the District Court erred in refusing American Express Company's ("Amex's") request for a stay pending arbitration of all

proceedings on claims brought by class members who are required to arbitrate their claims against Amex.

## STATEMENT OF THE CASE

### I. FACTUAL BACKGROUND

This case concerns EMV technology, which reduces fraud in the payments industry through the use of secure chips embedded in payment cards. (ECF No. 865-29 (AMEX00000397 at -398); ECF No. 865-30 (AMEX00000425 at -431 to -432).) Those chips protect data and make electronic transactions more secure when read by an EMV-enabled terminal. (ECF No. 865-31 (AMEX00592286 at -287); ECF No. 865-32 (AMEX00062178 at 9).) But the technology only works if merchants deploy EMV-enabled chip readers at the point of sale. (ECF No. 862-36 (Robert Burns Dep. Tr. 132:22-133:03); ECF No. 865-35 (AMEX02790937 at -937).)

Before the introduction of EMV technology, Amex and other issuers generally absorbed the cost of fraudulent transactions, provided that the merchant had complied with payment processing and acceptance requirements. (JA151,169-70, ECF No. 291, Am. Compl. ¶¶ 3, 71-72; ECF No. 862-20 (Karen Czack Dep. Tr. 196:8-17).) Because issuers were financially responsible for fraudulent transactions, they had an incentive to

transition to EMV technology to reduce incidences of fraud.  (ECF No. 865-28 (AMEX00006685 at 11); ECF No. 865-44 (AMEX00018094 at 2); ECF No. 862-35 (Adrian Villaraos Dep. Tr. 174:11-175:4).)  Credit card networks (*i.e.*, Visa, Mastercard, Discover and Amex) also had an incentive to transition to EMV technology to reduce fraud because fraud increases the cost of serving credit card customers, which, in turn, increases the overall cost of credit card transactions.  (ECF No. 862-35 (Adrian Villaraos Dep. Tr. 174:11-175:4); ECF No. 865-37 (AMEX00000414 at -417).)

Thus, in the United States, as they had in other parts of the world, the credit card networks encouraged merchants to install and use EMV technology by adopting a so-called fraud liability shift date ("FLS date").  (ECF No. 865-29 (AMEX00000397 at -399 to -401); ECF No. 862-35 (Adrian Villaraos Dep. Tr. 164:22-167:10); ECF No. 865-44 (AMEX00018094 at 2); ECF No. 862-20 (Karen Czack Dep. Tr. 195:20-24); ECF No. 865-6 (AMEX01347949 at 30-34, 36-38, 40-41, 43-45, 48).)  After the FLS date, a merchant who had failed to adopt EMV technology became responsible for any fraud losses through "chargebacks".  (ECF No. 862-20 (Karen Czack Dep. Tr. 195:18-196:07); ECF No. 862-36 (Robert Burns Dep. Tr. 132:15-19).)

Plaintiffs are a class of merchants who received fraud chargebacks after the FLS date and allege that the four credit card networks—Visa, Mastercard, Discover and Amex—illegally conspired in setting their FLS dates on the same date of October 1, 2015. (JA150-51,181-82, ECF No. 291, Am. Compl. ¶¶ 2, 97.) Plaintiffs' allegations about the nature of the purported conspiracy have shifted over time. Initially, Plaintiffs alleged that the networks conspired by setting the same FLS date, instead of different dates. (ECF No. 1, Compl. ¶¶ 2, 75, 77.) Later, Plaintiffs asserted that the conspiracy was not to impose the same FLS date, but rather to refuse to delay the FLS date by two years. (*See, e.g.*, ECF No. 904, Pls.' Opp'n to Visa & Mastercard's Mot. for Summ. J. at 72-73.)

In all events, Plaintiffs assert identical class claims against all four networks on behalf of merchants who incurred one or more unreimbursed chargebacks between October 1, 2015 (the date of the actual FLS) and September 30, 2017 (the date Plaintiffs assert the fraud liability shift would have occurred in a but-for world without the alleged conspiracy). (ECF No. 774-1, Pls.' Mem. of Law in Supp. of Mot. for Approval of Class at 1-2.) Significantly for purposes of this appeal, Plaintiffs allege that all four networks are jointly and severally liable for all chargebacks imposed by all four networks. (ECF No. 503, Pls.' Reply in Supp. of Mot. for Class

7

Certification at 18; JA327, ECF No. 644, Mem. & Order Denying Pls.' Mot. for Class Certification at 15.)

The class representatives in this case include merchants who, during the relevant time frame, accepted Amex by agreeing to a CAA with Amex. (JA687, *B & R Supermarket et al. v. Visa Inc., et al.*, 3:16-cv-01150 (N.D. Cal.) ("N.D. Cal. Action") ECF No. 282, Order Granting Mot. to Transfer at 2.) Likewise, the defined class includes all merchants who incurred an FLS chargeback during the relevant time period, including merchants with Amex CAAs. (ECF No. 774-1, Pls.' Mem. of Law in Supp. of Mot. for Approval of Class at 1-2.) Under the CAA, merchants are required to arbitrate all disputes with Amex. (JA452-53, ECF No. 925, Declaration of R. Nanda ¶¶ 14-15.) The CAA also includes a choice of forum provision requiring that any disputes litigated in court be resolved in New York, New York. (*See* ECF Nos. 869-1 to 869-9 ¶ 8(e).)

## II. PROCEDURAL HISTORY

### A. Early Case History

This lawsuit was originally filed in the U.S. District Court for the Northern District of California in 2016. (ND Cal. Action ECF No. 1, Compl. at 1.) In addition to the four credit card networks, the complaint named as defendants a number of credit card-issuing banks and EMVCo (*id.*

¶¶ 6-22), an organization that promulgates open industry specifications and helps to manage related testing processes (ECF No. 865-33 (AMEX00650585 at 4)). The original complaint included two named Plaintiffs: B&R Supermarket, Inc. d/b/a Milam's Market ("B&R") and Grove Liquors LLC ("Grove"). (N.D. Cal. Action ECF No. 1, Compl. at 1.) Plaintiffs subsequently filed a motion to intervene and to amend to add three additional named Plaintiffs: rue21, Strouk Group LLC d/b/a Monsieur Marcel ("Monsieur Marcel") and Palero Food Corp. and Cagueyes Food Corp. (collectively "Fine Fare"). (N.D. Cal. Action ECF No. 290, Mot. to Intervene Named Pls. at 1.) The court permitted Monsieur Marcel and Fine Fare to intervene but denied intervention by rue21. (JA710, N.D. Cal. Action ECF No. 346, Order Granting in Part and Denying in Part Mots. to Dismiss, Granting in Part and Denying in Part Mot. to Intervene, & Denying as Moot Mot. to Compel Arb. ("Order re Mots. to Dismiss, Intervene & Compel Arb.") at 21.)

Defendants moved to dismiss on a variety of grounds. (N.D. Cal. Action ECF No. 301, Bank Defs.' Mot. to Dismiss; N.D. Cal. Action ECF No. 303, Non-Bank Defs.' Mot. to Dismiss.) The court granted the motion as to the issuing banks and EMVCo but denied the motion as to the networks. (JA703,708, N.D. Cal. Action ECF No. 346, Order re Mots. to

9

Dismiss, Intervene & Compel Arb. at 14, 19.)  In addition to moving to
dismiss, Amex also moved to compel arbitration as to all of the named
Plaintiffs that are subject to the CAA—that is, all of the named Plaintiffs
other than Fine Fare—and to transfer venue of those Plaintiffs' claims
against Amex to the U.S. District Court for the Southern District of New
York pursuant to the forum selection clause in the CAA.  (N.D. Cal. Action
ECF No. 256, Amex's Notice of Mot. & Suppl. Mot. to Compel Arb. &
Transfer Venue at 1; *see also* N.D. Cal. Action ECF No 229, Mot. to
Compel.)  The court granted Amex's motion to transfer as to B&R and
Grove and denied Amex's motion to compel arbitration without prejudice,
reasoning that it should be brought in New York following the transfer.
(JA688, N.D. Cal. Action ECF No. 282, Order Granting Mot. to Transfer at
3.)  In doing so, the court found that B&R's and Grove's claims were
"claims" within the meaning of the CAA.  (*Id.* at 2-3.)

Subsequently, the court also granted an unopposed motion to transfer
the claims of Monsieur Marcel to Southern District of New York.  (N.D.
Cal. Action ECF No. 352, Amex's Mot. to Transfer; JA712, N.D. Cal.
Action ECF No. 358, Order Granting Unopposed Mot. to Transfer.)
Monsieur Marcel thus joined B&R and Grove as plaintiffs in the Southern
District of New York action.  Because Fine Fare does not accept American

10

Express cards and is not subject to a CAA, its claims against Amex remained in the U.S. District Court for the Northern District of California.

Nothing substantive ever happened in the case proceeding in the U.S. District Court for the Southern District of New York. (*See generally B & R Supermarket et al. v. Visa Inc., et al.*, 1:16-cv-05338 (S.D.N.Y.) ("S.D.N.Y. Action").) Rather, Plaintiffs voluntarily dismissed without prejudice pursuant to a tolling agreement. (JA750, S.D.N.Y. Action ECF No. 318, Stipulation & Order of Dismissal.) No motion to compel arbitration was ever brought. No class was ever certified.

In the Northern District of California action, Visa and Mastercard filed a motion to transfer all remaining claims under 28 U.S.C. § 1404(a) to the U.S. District Court for the Eastern District of New York so that those claims could proceed alongside an existing Mult-District Litigation involving merchant antitrust class claims against Visa and Mastercard. (N.D. Cal Action ECF No. 437, Mastercard & Visa's Mot. to Transfer.) The court granted that motion and transferred all remaining claims to the U.S. District Court for the Eastern District of New York. (JA713, N.D. Cal. Action ECF No. 518, Order Granting Mot. to Transfer.) That included the claims of all named Plaintiffs against Visa, Mastercard and Discover, as well as Fine Fare's claims against Amex. (*Id.*)

11

### B.     First Motion for Class Certification

Plaintiffs filed their first motion for class certification while the case was still in the U.S. District Court for the Northern District of California. (N.D. Cal. Action, ECF No. 425, Pls.' Mot. for Class Certification.) However, while the motion was pending, the case was transferred to U.S. District Court for the Eastern District of New York, where the motion was resolved by Chief Judge Brodie (the "District Court").  Plaintiffs proposed a single class of merchants who had been subject to FLS chargebacks by all four networks "from October 2015 until the anticompetitive conduct ceases".  (ECF No. 425, Mot. for Class Certification at 2.)  That proposed class did not differentiate between:  (a) the claims of merchants who accept Amex, are subject to a CAA and are required to arbitrate; and (b) the claims of merchants who do not accept Amex and are entitled to pursue claims in court.  (*See id.*)

Given the complicated nature of the transfers—with some claims against Amex having been transferred to U.S. District Court for the Southern District of New York and others being transferred to U.S. District Court for the Eastern District of New York—Magistrate Judge Orenstein (in the Eastern District) asked the parties to clarify the relationship between Plaintiffs' motion for class certification and their claims against Amex.

(JA306, ECF No. 553, Min. Entry for Proceedings Before Judge Orenstein.)
In their letter to Judge Orenstein, Plaintiffs conceded that the only claims
remaining against Amex were those brought by Fine Fare on behalf of
merchants who *do not* accept Amex. (JA270, ECF No. 552, Joint Status
Report at 2.) Nonetheless, Plaintiffs argued in favor of a class definition that
included *all merchants* as to *all defendants*, contending that subclasses were
not necessary because Plaintiffs claim Amex is jointly and severally liable
with the other defendants for all claims. (*Id.* at 2-3.) Plaintiffs ignored the
fact that Amex could not be jointly and severally liable in court for Amex
chargebacks because such chargebacks would, by definition, only be
incurred by merchants who accept Amex and are required to arbitrate.

In its letter to Judge Orenstein, Amex noted that Plaintiffs' proposed
class was overbroad in two respects. (JA310-12, ECF No. 603, Ltr. from
Peter T. Barbur to Orenstein, J. at 1-3.) First, it included claims against
Amex by B&R and Monsieur Marcel, which could not proceed in the
District Court because those merchants are required to arbitrate. (*Id.* at 2.)
Second, it presumed that Fine Fare could assert claims on behalf of Amex-
accepting merchants, which was wrong because Fine Fare does not accept
Amex. (*Id.*) As Amex noted, notwithstanding Plaintiffs' overbroad class

13

definition, the class could not include claims by any Amex-accepting merchants. (*Id.*)

Amex also filed a brief opposing the motion for class certification on the basis that the class was overbroad because it included merchants who accept Amex cards, are subject to the CAA and are thus required to arbitrate. (ECF No. 463, Amex's Opp'n to Pls.' Mot. for Class Certification at 2-3.) Amex requested that the District Court deny the motion for class certification as to Amex or, alternatively, define two classes: (1) a class of non-Amex-accepting merchants who could bring claims against all four networks; and (2) a class of Amex-accepting merchants who could bring claims against Visa, Mastercard and Discover but not Amex. (*Id.* at 3.)

In reply, Plaintiffs argued that Amex's overbreadth objections were premature and said that overbreadth issues "can be addressed by subclasses". (ECF No. 503, Pls.' Reply in Supp. of Mot. for Class Certification at 17.) But Plaintiffs have never proposed subclasses and the District Court has never defined subclasses. Plaintiffs also argued that the claims of Amex-accepting merchants could proceed against Visa, Mastercard and Discover on basis of joint and several liability. (*Id.* at 17-18.) Plaintiffs did not argue and could not argue that the principle of joint and several liability solved the

14

problem of defining a class with merchants who cannot sue Amex in federal court.

In its decision on class certification, the District Court mistook Amex's argument as contending that "Plaintiffs who are signatories to the CAA cannot maintain an action in this Court against the non-American Express Defendants for American Express' conduct, based on joint and several liability". (JA328, ECF No. 644, Mem. & Order Denying Pls.' Mot. for Class Certification at 16.) Amex, in fact, had made no such argument. Amex's arguments were focused on the ability of Amex-accepting merchants to assert claims in this case *against Amex*. (ECF No. 463, Amex's Opp'n to Pls.' Mot. for Class Certification at 1-4.) The District Court ignored that issue. The District Court did, however, deny without prejudice the motion for class certification on the basis that Plaintiffs' proposed classes were not ascertainable because Plaintiffs relied on "four different class periods, some of which appear[ed] to be completely arbitrary". (JA337-39, ECF No. 644, Mem. & Order Denying Pls.' Mot. for Class Certification at 25-27.)

### C.     Second Motion for Class Certification

In 2018, Plaintiffs filed a renewed motion for class certification. (ECF No. 707, Pls.' Mem. of Law in Supp. of Renewed Mot. for Class

Certification)  To address the District Court's concerns about ascertainability, Plaintiffs proposed a class of merchants who incurred one or more unreimbursed chargebacks between October 1, 2015, and September 30, 2017.  (*Id.* at 2.)  Plaintiffs posited a new but-for world in which the four credit card networks all had the same FLS date but uniformly postponed the FLS date by two years.  (*Id.* at 8-13.)  As with their first proposed class, Plaintiffs proposed a single class encompassing all merchants (including those who accept Amex and are required to arbitrate) and asserting claims against all four networks, including Amex.  (*Id.* at 2.)

In support of their motion for class certification, Plaintiffs relied on a damages methodology set forth in the expert report of Dr. Micah Officer. (*See* ECF No. 707-5, Amex's Opp'n to Pls.' Renewed Mot. for Class Certification at 7-8.)  Dr. Officer used only one methodology and conducted only one type of damages calculation, covering all networks together.  (*See id.*)  Dr. Officer included every fraud chargeback incurred by any merchant regardless of whether they accept Amex and are required to arbitrate their claims against Amex.  (*See id.*)  Dr. Officer thus offered no measure of damages that could be awarded against Amex on behalf of merchants who do not accept Amex.  (*See id.*)

Once again, Amex opposed class certification on the basis that the
class improperly includes merchants who accept Amex and are required to
arbitrate their claims against Amex. (*Id.* at 1-3, 9-13.) Amex clarified that it
was not arguing, as the District Court had erroneously said in its prior class
certification ruling, that Amex-accepting merchants could not maintain
claims against the three other network defendants. (*Id.* at 11-12.) Rather,
with the District Court having previously rejected Amex's overbreadth
argument, Amex framed its arguments (in part) in terms of the proposed
class not being ascertainable as to Amex because the record contains no
information from which it can be determined which merchants accepted
Amex at any point in time during the class period. (*Id.* at 9-13.) Amex
noted that Dr. Officer presented no methodology for determining damages as
to Amex but rather lumped together all four defendants in a one-size-fits-all
damages calculation. (*Id.* at 10-12.) In particular, Amex noted that the
number of merchants who accept Amex changed dramatically over the
course of the class period because the class period coincided with a
significant effort by Amex to close the "merchant coverage gap" that Amex
had traditionally experienced vis-à-vis Visa and Mastercard by signing up
more merchants to accept Amex. (*Id.* at 10-11.)

17

In replying to Amex's arguments, Plaintiffs did not contend that they had any means to determine which class members accepted Amex at any time during the class period. Nor did Plaintiffs claim that Dr. Officer's damages model calculated damages that could be awarded against Amex by merchants who do not accept Amex. Rather, Plaintiffs again relied on the concept of joint and several liability and incorrectly asserted that "Amex can be held liable for the entire amount of damages stemming from the other Networks' imposition of FLS chargebacks"—again ignoring that Amex cannot be held liable in this case for any FLS chargebacks to merchants who accept Amex and are required to arbitrate claims against Amex. (ECF No. 707-9, Pls.' Reply in Resp. to Defs.' Opp'n to Pls.' Renewed Mot. for Class Certification at 4.) Plaintiffs also argued that, in theory, there must exist evidence to identify which merchants have CAAs with Amex—without identifying any such evidence or saying how Plaintiffs might use it to segregate damages awardable against Amex. (*See id.*)

In an order dated January 19, 2021, the District Court certified the class as requested by Plaintiffs: a class of all merchants who had received an FLS chargeback from any network during the class period, including merchants who are subject to a CAA and are therefore required to arbitrate their claims against Amex. (JA387-90,427,443-45, ECF No. 744, Mem. &

Order Granting Pls.' Renewed Mot. for Class Certification at 48-51, 88, 104-06.)

With respect to Amex's argument about ascertainability, the District Court found that the class is not "indeterminate in some fundamental way", even though Plaintiffs did not and could not propose any method for separating the claims of Amex-accepting merchants from the claims of non-Amex-accepting merchants without conducting mini-trials as part of a post-trial claims process. (*Id.* at 55.) The District Court also again mistakenly asserted that Amex was arguing that Amex-accepting merchants cannot assert claims for joint and several liability against Visa, Mastercard and Discover. (*Id.* at 52-55.)

### D. Motion To Compel Arbitration

Following class certification, Amex found itself in an untenable situation: it faced trial in an antitrust class action in federal court where the only certified class includes merchants who cannot pursue claims against Amex in court because they are required to arbitrate. Amex also faced the possibility of a trial where Amex would not know what damages were being sought from Amex because Plaintiffs' only damages measure includes claims by merchants who cannot sue in court and are required to arbitrate. (*Id.* at 98-99.)

Accordingly, on November 30, 2022—the date set by the District Court for *Daubert* motions, motions for summary judgment and motions to compel arbitration—Amex filed three motions to attempt to rectify the situation: (a) a motion to exclude the opinions offered by Dr. Officer under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because Dr. Officer had failed to identify any methodology for determining damages that could be asserted by non-Amex-accepting merchants against Amex; (b) a motion for summary judgment, which argued, in relevant part, that summary judgment should be entered for Amex on the same basis (*i.e.*, Plaintiffs' failure to establish damages); and (c) a motion to compel arbitration, stay all proceedings against Amex and decertify the class. (ECF No. 841, Mem. of Law in Supp. of Amex Mot. to Exclude Test. of Dr. Micah Officer; ECF No. 824, Mem. of Law in Supp. of Amex's Mot. for Summ. J.; ECF No. 845, Mem. of Law in Supp. of Amex's Mot. to Compel Arbitration.)

With respect to Amex's motion to compel arbitration, there was no dispute that the named Plaintiffs include merchants who are subject to a CAA. (ECF No. 845, Mem. of Law in Supp. of Amex's Mot. to Compel Arbitration at 1-3, 6-9, 15-17.) There was also no dispute that Plaintiffs' claims are "claims" for purposes of the CAA, as the U.S. District Court for

the Northern District of California had long ago found. (*Id.* at 11-13.)

Plaintiffs opposed Amex's motion to compel arbitration only on the basis

that (a) Amex had failed to name every member of the class that is required

to arbitrate and (b) the CAA is supposedly unconscionable. (ECF No. 900,

Pls.' Mem. in Opp'n to Amex's Mot. to Compel Arbitration at 5-11.) In an

order dated August 14, 2024, the District Court properly rejected those

arguments and found that the CAA arbitration provisions are valid and

"apply to Plaintiffs' claims". (JA483-86, ECF No. 936, Mem. & Order re

Amex's & Discover's Mots. to Compel at 29-32.) The District Court ended

its discussion of arbitration with this conclusion: "[T]he Court grants

Amex's motion to compel arbitration of the claims against it by class

members who are bound by CAAs". (*Id.* at 32.) The District Court thus

explicitly acknowledged that defined class includes merchants who are

required to arbitrate their claims.

Amex also had moved the District Court to enter a stay. (JA446, ECF

No. 844, Notice of Mot. to Compel Arbitration at 1.) As discussed below,

the law is clear that a district court compelling arbitration must order a stay.

However, the District Court did not enter any kind of stay at all—in fact, the

District Court did not discuss the fact that Amex had requested a stay. (*See*

JA455, ECF No. 936, Mem. & Order re Amex's & Discover's Mots. to Compel.)

Instead, in denying Amex's motion to decertify the class, the District Court ordered that the case move forward with a class definition that included merchants whose claims cannot be heard in federal court but rather must be arbitrated. (*Id.* at 32-38.) The District Court did not question that Plaintiffs' only damages model asserts against Amex damages from chargebacks incurred by merchants subject to a CAA. But the District Court said that this did not matter because "CAA-bound merchants incurred chargebacks arising from the alleged antitrust conspiracy", and "those chargebacks contribute to the damages arising from the conspiracy as alleged against *all* Defendants — not just Amex". (*Id.* at 36-38.) Thus, the District Court refused to enter a stay, and the result is the opposite: claims that contractually must proceed in arbitration instead are moving toward trial in the District Court.

On August 27, 2024, Amex filed a timely notice of appeal of the District Court's refusal to enter a stay. (JA493, ECF No. 941, Notice of Appeal at 1.) At that point, the District Court did not stay any proceedings in light of the appeal, and instead continued to issue orders affecting Amex's substantive rights. In particular, on September 13, 2024, the District Court

denied Amex's *Daubert* motions directed to Plaintiffs' experts, including

Dr. Officer. (JA568, ECF No. 946, Mem. & Order re Amex's Mot. to

Exclude Test. of Dr. Micah Officer at 71.) In denying Amex's motion, the

District Court agreed that in light of the limitations of his methodology—his

failure to separate chargebacks for merchants who are and are not subject to

an Amex CAA—Dr. Officer's opinions could not "establish damages owed

by Amex". (*Id.* at 55.) But the District Court speculated that Dr. Officer's

opinions might be supplemented "with other evidence that independently

establishes what proportion of the Class may appropriately recover from

Amex". (*Id.* at 56.) Neither the District Court nor the Plaintiffs have ever

identified what this "other evidence" might be. Thus, Amex was simply

denied the opportunity to challenge under *Daubert* any experts damages

opinions that might actually be offered against it.

On September 16, 2024, Amex sent a letter to the District Court

calling attention to Amex's notice of appeal and noting that, under *Coinbase,

Inc. v. Bielski*, 599 U.S. 736 (2023), Amex's appeal automatically stays all

proceedings against Amex. (JA495, ECF No. 943, Ltr. from Peter T. Barbur

to Brodie, C.J. at 1.) Plaintiffs responded with a letter attempting to

distinguish *Coinbase* on the ground that the District Court here had granted

Amex's motion to compel arbitration. (JA496, ECF No. 944, Ltr. from

George C. Aguilar to Brodie, C.J. at 1.)  In other words, Plaintiffs argued

that the requirement to enter a stay only applies where an appeal concerns a

denial of a motion to compel arbitration but not an appeal of an order that

grants a motion to compel arbitration but nonetheless refuses to stay claims

subject to arbitration.  (*Id.*)  Amex replied that *Coinbase* applies to all

interlocutory appeals under § 16(a) of the Federal Arbitration Act ("FAA"),

9 U.S.C. § 16(a), including appeals of a refusal to enter a stay.  (JA569, ECF

No. 947, Ltr. from Peter T. Barbur to Brodie, C.J. at 1.)

On September 24, 2024, the District Court issued a text order that

stated "[t]here are no pending claims against Amex by merchants bound by"

the CAA because none had been transferred to the Eastern District of

New York.  (JA571, Order, Sept. 24, 2024 ("Text Order").)  However, at the

same time, the Order alternatively asserted that claims by CAA-bound

merchants "are stayed pending arbitration".  (*Id.*)  Again, that does not

match what is actually happening in the case:  the District Court took no

specific action to stay claims against Amex, and instead made clear that all

claims against all defendants on behalf of all merchants are moving to trial.

On September 25, 2024, the District Court entered another order in

violation of the automatic stay under *Coinbase*, this one denying (among

other things) Amex's motion for summary judgment directed to Plaintiffs'

failure to offer a damages measure as to Amex. (JA620, ECF No. 950, Mem. & Order re Amex's Mot. for Summ. J. at 49.) In its summary judgment motion, Amex had argued that damages are an element of Plaintiffs' claims and that Plaintiffs' only proof of damages as to Amex is the report of Dr. Officer. (ECF No. 824, Mem. of Law in Supp. of Amex's Mot. for Summ. J. at 21-24.) Because, as the District Court itself had found, Dr. Officer's report offers no measure of damages against Amex, Amex argued that the jury would be required to engage in speculation and guesswork if it attempted to award damages against Amex. (*Id.*)

The District Court's September 25, 2024 Order gave little attention to Amex's arguments, asserting that it had already addressed them in connection with Amex's *Daubert* motion directed to Dr. Officer. (JA596, ECF No. 950, Mem. & Order re Amex's Mot. for Summ. J. at 25.) The District Court acknowledged that a jury could "not rely solely on Dr. Officer's testimony to establish damages owed by Amex", but the District Court again speculated about the possibility of "other admissible evidence tending to show what proportion of the Class is or is not bound by a CAA". (*Id.* at 48.) The Plaintiffs still have never—including in response to Amex's motion for summary judgment—pointed to any such "evidence"; they instead rely solely on Dr. Officer's report. (ECF No. 894, Pls.' Mem. in

Opp'n to Amex's Mot. for Summ. J. at 23-25.) Nor did the District Court specify what "evidence" it had in mind. (*See* JA619, ECF No. 950, Mem. & Order re Amex's Mot. for Summ. J. at 48.) Thus, Amex was denied the opportunity to challenge on summary judgment the evidence (if any) Plaintiffs might offer to establish damages as to Amex.

## SUMMARY OF THE ARGUMENT

After granting a motion to compel arbitration, a district court is required to stay all claims subject to arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). In addition, once a party has filed an interlocutory appeal under § 16 of the FAA, a district court must stay all proceedings while that interlocutory appeal proceeds. *See Coinbase*, 599 U.S. at 740. Here, the District Court failed to abide by both these requirements by (a) refusing to enter a stay for the claims against Amex for which it had compelled arbitration (*i.e.*, claims brought by merchants bound by Amex's CAA), and (b) continuing to enter rulings affecting Amex's substantive rights after Amex had filed the notice of appeal governing this current interlocutory appeal.

A subsequent text order stating that claims are stayed did not cure those errors. Amex faces a class-action trial where the single certified class includes merchants who are required to arbitrate their claims against Amex.

26

Amex therefore seeks a stay of the claims of Amex-accepting merchants who are bound to arbitrate claims against Amex. To ensure that stay is effective, the District Court should be required to segregate such claims and stay all proceedings concerning them.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court "review[s] de novo the denial of a motion to stay an action pending arbitration". *Mediterranean Shipping Co. S.A. Geneva v. POL-Atl.*, 229 F.3d 397, 402 (2d Cir. 2000); *see also Adams v. Suozzi*, 433 F.3d 220, 226 (2d Cir. 2005).

### II. THE DISTRICT COURT IMPROPERLY REFUSED TO ENTER A STAY OF THE CLAIMS FOR WHICH IT COMPELLED ARBITRATION.

This year, the Supreme Court unequivocally held that, if a district court enters an order granting a motion to compel arbitration, it must also stay all claims that are subject to arbitration. *Smith*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Thus, the District Court here was required to stay proceedings against Amex upon compelling the claims against Amex to arbitration, and its failure to do so constitutes reversible error.

Although Amex specifically requested a stay in its motion to compel arbitration, the District Court's order granting the motion to compel did not acknowledge that request and did not enter any stay. Instead, the District Court's decision made clear that it was refusing to enter a stay. Despite finding that many class members were required to arbitrate their claims, the District Court denied Amex's motion to decertify the class and directed the case to proceed based on a single class definition that includes merchants whose claims against Amex must be arbitrated. (JA486-92, ECF No. 936, Mem. & Order re Amex's & Discover's Mots. to Compel at 32-38.) A case that is marching toward trial on behalf of merchants whose claims against Amex cannot, in accordance with the parties' arbitration agreement, proceed in federal court has not been stayed.

As further evidence that the District Court failed to stay the claims of CAA-bound merchants against Amex, the District Court continued to issue orders affected Amex's substantive rights with respect to claims for which arbitration has been compelled, even *after* granting Amex's motion to compel. For instance, on September 13, 2024, the District Court denied in part Amex's *Daubert* motions concerning both of Plaintiffs' experts, including Plaintiffs' damages expert, Dr. Officer. (JA568, ECF No. 946, Mem. & Order re Amex's Mot. to Exclude Test. of Dr. Micah Officer at 71.)

28

As explained above, Amex's *Daubert* motion had argued that Dr. Officer's damages methodology was inadmissible against Amex because he had no way of separating chargebacks incurred by merchants whose claims could proceed in federal court from those incurred by CAA-bound merchants, whose claims were subject to arbitration and could not proceed in federal court against Amex. (ECF No. 841, Mem. of Law in Supp. of Amex's Mot. to Exclude Test. of Dr. Micah Officer at 1-2, 4-6, 8-14.) In denying Amex's motion, the District Court held that, although Dr. Officer's opinions could not be used to "establish damages owed by Amex", they might be supplemented "with other evidence that independently establishes what proportion of the Class may appropriately recover from Amex". (JA553, ECF No. 946, Mem. & Order re Amex's Mot. to Exclude Test. of Dr. Micah Officer at 56.)

In effect, the District Court's order did not just deny Amex's pending *Daubert* motion, but it also foreclosed Amex from challenging under *Daubert* any expert damages opinions that might be offered against it going forward—on the ground that Plaintiffs had not disclosed any such opinions. (*See id.* at 54-57.) Amex could not have focused its *Daubert* arguments on opinions Plaintiffs had never disclosed.

29

Compounding the problem, the District Court then denied Amex's motion for summary judgment—including based on Plaintiffs' lack of damages evidence specific to non-Amex-CAA-bound merchants—again speculating that Plaintiffs later might be able to adduce some unidentified, undescribed and undisclosed "admissible evidence tending to show what proportion of the Class is or is not bound by a CAA". (JA619, ECF No. 950, Mem. & Order re Amex's Mot. for Summ. J. at 48.) The purpose of summary judgment is to determine whether claims can proceed based on the evidence in the record. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (holding that "the appropriate summary judgment question will be whether the *evidence in the record* could support a reasonable jury finding" in favor of either side (emphasis added)). Here, there is no evidence in the record of the amount of damages for which Amex might be held liable. Denying Amex's motion for summary judgment based on unidentified evidence that is *not* in the record is inconsistent with the whole purpose of summary judgment.

All told, the District Court's summary judgment decision confirmed that this case is headed to trial (a) as a class action where the only class includes merchants who are required to arbitrate and (b) with Amex having no idea what damages Plaintiffs are seeking to recover from Amex. (*See*

30

JA573,619, ECF No. 950, Mem. & Order re Amex's Mot. for Summ. J. at 2,

48.)

## III.  THE DISTRICT COURT IMPROPERLY FAILED TO STAY PROCEEDINGS AGAINST AMEX AFTER AMEX FILED ITS NOTICE OF APPEAL.

Under *Coinbase*, the filing of an interlocutory appeal under 9 U.S.C.

§ 16(a)(1)(A) requires a district court to stay its proceedings while the

interlocutory appeal is ongoing.  599 U.S. at 740.  Thus, Amex's notice of

appeal here divested the District Court of jurisdiction and required the

District Court to stay proceedings over claims against Amex.  *See id.*  This

comports with the longstanding rule that the "filing of a notice of appeal is

an event of jurisdictional significance—it confers jurisdiction on the court of

appeals and divests the district court of its control over those aspects of the

case involved in the appeal".  *Griggs v. Provident Consumer Disc. Co.*, 459

U.S. 56, 58 (1982)); *see also New York v. U.S. Dep't of Homeland Sec.*, 974

F.3d 210, 215 (2d Cir. 2020) ("The filing of a 'timely and sufficient notice

of appeal' divests the district court of jurisdiction 'as to any matters involved

in the appeal' or 'as to the matters covered by the notice.'" (quoting

*Leonhard v. United States*, 633 F.2d 599, 609-10 (2d Cir. 1980))).

As detailed above, the District Court not only refused to stay

proceedings against Amex by CAA-bound merchants after compelling those

merchants' claims to arbitration, in violation of *Smith*, but the District Court also repeatedly issued rulings affecting Amex's substantive rights after Amex had filed its notice of appeal.  (*See, e.g.*, JA568, ECF No. 946, Mem. & Order re Amex's Mot. to Exclude Test. of Dr. Micah Officer at 71; JA619, ECF No. 950, Mem. & Order re Amex's Mot. for Summ. J. at 48.) The District Court lacked jurisdiction to issue such rulings under *Coinbase*, *Griggs* and *New York*, and therefore such rulings are null and void.  *See, e.g.*, *Dexia SA/NV v. Bear, Stearns & Co.*, 945 F. Supp. 2d 426, 430 (S.D.N.Y. 2013) ("As a general rule, decisions on the merits made in the absence of subject matter jurisdiction are null and void.").

## IV.   THE DISTRICT COURT'S SEPTEMBER 24, 2024 TEXT ORDER DOES NOT FIX THE PROBLEM.

On September 24, 2024, the District Court purported to rectify its errors in refusing to enter a stay by issuing a text order stating that (a) "[t]here are no pending claims against Amex by merchants bound by Card Acceptance Agreements ('CAA-bound merchants') before this Court" because "all claims against Amex by CAA-bound merchants were referred to the United States District Court for Southern District of New York, where the parties stipulated to dismissal of the action without prejudice"; and (b) "to the extent there are any CAA-bound merchants' claims against Amex before the Court, those claims are stayed pending arbitration pursuant to

Smith v. Spizzirri, 601 U.S. 472, 47879 [sic] (2024)".  (JA571, Text Order, Sept. 24, 2024.)  This text order is logically flawed and internally inconsistent and, in any event, does nothing to resolve the problem that, absent intervention by this Court, class claims against Amex are proceeding to trial even though the only defined class includes merchants who are required to arbitrate and cannot sue in court.

As an initial matter, just as with the September 13, 2024 Order denying Amex's *Daubert* motions and the September 25, 2024 Order denying Amex's motion for summary judgment, the District Court had no jurisdiction to issue the September 24, 2024 Text Order.  *See Coinbase*, 599 U.S. at 740.   But even beyond the fact that the September 24, 2024 Order should never have been issued, it is wrong in at least two respects.

*First*, the District Court's statement that there are no pending claims against Amex by merchants bound by the CAA is false.  The District Court acknowledged as much when it granted the motion to compel arbitration of "claims against [Amex] by class members who are bound by CAAs". (JA486, ECF No. 936, Mem. & Order re Amex's & Discover's Mot. to Compel at 32.)  The District Court thus itself acknowledged that the class includes claims by merchants who are required to arbitrate.  Moreover, contrary to what the District Court said, the fact that the U.S. District Court

for the Northern District of California had originally transferred the named Plaintiffs' claims against Amex to the U.S. District Court for the Southern District of New York is irrelevant. (JA571, Text Order, Sept. 24, 2024.) No class was ever certified in that case, and no motion to compel arbitration was ever brought or decided. Rather, Plaintiffs' counsel circumvented the U.S. District Court for the Northern District of California's transfer order and ensured that nothing would happen in the transferred case by dismissing it without prejudice. (JA750, S.D.N.Y. Action ECF No. 318, Stipulation & Order of Dismissal.) What matters is that Plaintiffs' counsel continued to pursue claims in the U.S. District Court for the Eastern District of New York against Amex on behalf of all named Plaintiffs, including those bound by a CAA. Plaintiffs' counsel then defined a putative class as to Amex that included all merchants who incurred an FLS chargeback during the class period, regardless of whether they are required to arbitrate their claims against Amex. (*See* ECF No. 707, Pls.' Mem. of Law in Supp. of Renewed Mot. for Class Certification at 2.) The District Court then certified that broad class, which includes CAA-bound merchants.

*Second*, the District Court is also wrong to assert that the claims of CAA-bound merchants are "stayed pending arbitration". By refusing to decertify the class, the District Court ensured that this case will continue

34

against Amex as a class action where the class includes class members who are required to arbitrate their claims. That is the opposite of a stay.

## V. THE DISTRICT COURT SHOULD HAVE SEGREGATED THE CLAIMS OF MERCHANTS WHO ARE REQUIRED TO ARBITRATE.

As discussed above, the basic problem is that Plaintiffs improperly sought to certify a single class asserting claims against Amex even though many class members are required to arbitrate their claims against Amex and cannot proceed in federal court. The District Court could have handled this in a number of different ways. It could have denied class certification altogether for claims against Amex. It could have required subclasses of merchants who are required to arbitrate their claims against Amex and those who are not. Once it compelled arbitration, the District Court could and should have decertified the class as to Amex because common issues can no longer "predominate" over individual issues when some claims can proceed in federal court and others cannot. *See Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262 (2d Cir. 2021) (decertification is proper if the court "find[s] that a previously satisfied requirement of Rule 23 is now lacking"); *see also Mazzei v. Money Store*, 829 F.3d 260, 270, 272 (2d Cir. 2016) (affirming decertification under the predominance requirement where, as here, some of the class members had claims that could proceed and some did not, and a

35

"class-wide resolution" of which class members had viable claims "was not possible"). At Plaintiffs' urging, the District Court did none of this.

The common thread in all of these alternative approaches is acknowledging that a single class cannot properly lump together merchants who have viable claims in federal court and those who do not. Rather, those claims must be segregated. This is particularly true because the claims by merchants who are required to arbitrate against Amex must be stayed whereas the claims of non-CAA bound merchants who can sue in federal court do not need to be stayed. A stay of claims by merchants who are required to arbitrate simply cannot be effectuated unless those claims are segregated from the claims of merchants who are not required to arbitrate but can instead proceed in court.

Accordingly, this Court should issue an order requiring the District Court to actually stay the claims of Amex-accepting merchants who are bound to arbitrate. Because no stay can be effective unless there is segregation of the claims of merchants who are required to arbitrate, this Court should direct the District Court to segregate such claims and stay all proceedings concerning those claims. Once that is done, the District Court should be required to reconsider its *Daubert* and summary judgment rulings as to Amex in light of this Court's order. As discussed above, those rulings

36

should not have been issued in light of Amex's notice of appeal, which automatically stayed all proceedings against Amex and divested the District Court of jurisdiction over claims against Amex. Those rulings were in any event fatally flawed by the District Court's refusal to segregate the claims of merchants who are required to arbitrate. Once the claims of arbitration-bound merchants are segregated and stayed, it will be clear that Dr. Officer's damages opinions are not admissible against Amex because they do not correspond to the claims that can actually proceed against Amex. And once those damages opinions are excluded, it will be clear that Amex is entitled to summary judgment based on Plaintiffs' failure to offer any admissible evidence concerning the damages allegedly owed by Amex.

## CONCLUSION

For these reasons set forth above, Amex respectfully requests that this Court reverse the District Court's refusal to stay proceedings against Amex pending arbitration of the claims by merchants who are contractually obligated to arbitrate and issue an Order directing the District Court to segregate the claims of merchants who are required to arbitrate and stay all proceedings by those merchants.

Respectfully submitted,

/s/ Peter T. Barbur

37

Peter T. Barbur
Damaris Hernandez
David H. Korn
Rebecca J. Schindel
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Phone:  (212) 474-1000
Fax:  (212) 474-3700
Email:  pbarbur@cravath.com
Email:  dhernandez@cravath.com
Email:  dkorn@cravath.com
Email:  rschindel@cravath.com

*Attorneys for Defendant-Appellant*
*American Express Company*

# CERTIFICATE OF COMPLIANCE

I, Peter T. Barbur, hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,136 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

Dated:  November 15, 2024

/s/ Peter T. Barbur
Peter T. Barbur

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I caused to be electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system.  A copy of this brief has also been served by CM/ECF on all parties.

Dated:  November 15, 2024

/s/ Peter T. Barbur
Peter T. Barbur